Leonard Thomas DIXON, Appellant,

v.

UNITED STATES of America, Appellee.

No. 16690.

United States Court of Appeals Eighth Circuit.

Oct. 25, 1961.

Thomas Hullverson, St. Louis, Mo., for appellant.

Clark A. Ridpath, Asst. U. S. Atty., Kansas City, Mo., F. Russell Millin, U. S. Atty., Kansas City, Mo., and Kenneth H.

Taylor, Asst. U. S. Atty., Kansas City, Mo., on the brief, for appellee.

Before SANBORN, MATTHES and RIDGE, Circuit Judges.

MATTHES, Circuit Judge.

In this Dyer Act case [1] the defendant was found guilty by a jury and upon judgment being pronounced, was sentenced to imprisonment for a two-year term. The district court permitted notice of appeal to be filed without payment of fee but denied the defendant leave to perfect his appeal in forma pauperis on the ground that the appeal was "entirely without merit." Upon consideration of the agreed statement of the case and memoranda of trial counsel for defendant and the United States Attorney filed in connection with defendant's challenge of the certificate of the trial court that defendant's appeal was legally frivolous, we granted defendant leave to appeal as a poor person and appointed Mr. Thomas Hullverson, a member of the St. Louis Bar, to represent the defendant on appeal. We express to Mr. Hullverson our thanks for his services which proved of assistance in the disposition of the issue presented for determination.

The sole question here is whether portions of the court's charge to the jury were prejudicially erroneous. A brief résumé of the facts will assist in comprehending the basis for the claimed error.

On June 20, 1960, defendant went to the Jay Hawk Motor Company, a used car dealer in Salina, Kansas, for the express purpose of purchasing an automobile. Paul A. Loveland, a partner in the business, dealt with the defendant. With Loveland's permission, the defendant drove two other used automobiles in addition to the Buick automobile which became the subject of the Dyer Act violation. Concerning the Buick, Loveland testified that defendant stated he wanted to show it to his wife, who was at their home in Salina, and permission was

---

1. The indictment charged that defendant did unlawfully, wilfully, knowingly and feloniously transport in interstate commerce from Salina, Kansas, to a point approximately 5 miles east of Platte City, Missouri, a certain motor vehicle, knowing the same to have been stolen, in violation of Title 18 U.S.C.A. § 2312.

granted defendant to take the car for that purpose. The question of financing or paying for the automobile was also discussed. Loveland stated that defendant left with the Buick around 3:00 o'clock p. m. and when he had not returned by 8:00 o'clock that evening, he reported the matter to police officers. The automobile was recovered later at Platte City, Missouri, which is about 200 miles from Salina. From defendant's testimony the jury could have found that his right to drive the Buick automobile was not limited to the Salina, Kansas area. Additionally, he testified that after obtaining possession of the automobile, he decided to drive to Abilene, Kansas, about 20 miles from Salina, for the purpose of seeing his friend Joe Kapaske, apparently with the hope of securing needed money to complete the purchase of the automobile. He stopped at a bar in Abilene, met a "couple of guys" and began drinking with them. He remembers nothing thereafter until he was struggling with two men who turned out to be Missouri police officers, and who found defendant lying unconscious or asleep near the highway about 25–30 yards from the Buick, which was out of gasoline. At the trial defendant claimed he had been robbed of about $200 and denied driving the automobile across the state line. In this factual setting the court instructed the jury on the presumption of innocence, reasonable doubt, credibility of witnesses, and other matters usually submitted in criminal prosecutions, and then gave this charge which constitutes the bone of contention on this appeal:

> "Now, trying out an automobile ordinarily doesn't mean taking it and keeping it for hours and going out of the community and running it for miles and miles. It doesn't ordinarily mean that sort of thing. So, let's assume that this defendant had no right to take the automobile. But that isn't an offense. The particular offense is transporting it across the state line after he had taken it. *We can say as a matter of law that he had no right to take it across the state line and bring it in the State*

*of Missouri under the agreement that he had with the vendor of this car.*

> \*   \*   \*   \*   \*   \*

> "Now, members of the jury, I don't know what happened. I don't know whether he is guilty or whether he isn't. *I would say to you as a matter of the law,* that if this man went out and got drunk and got in the automobile and drove it over to Missouri, then under the law he is guilty, whether he was suffering from a state of alcoholic amnesia or not, because drunkenness is not an excuse for the commission of a crime, unless it has existed to the extent that it affects the mentality of an individual." (Emphasis supplied.)

Defendant recognizes that in federal jurisprudence a district judge has the right within limitations to comment upon the evidence. However, he strongly urges that that portion of the charge under attack does not constitute legitimate and proper comment on evidentiary matters but rather is an expression of an opinion upon an ultimate issue determinative of guilt or innocence.

The United States Attorney does not seriously contend that the portion of the charge under scrutiny standing alone is completely impervious to criticism. Rather, he relies on the principle that in considering the effect of a challenged portion of a court's instruction, this court must view the charge in its entirety, and not piecemeal. Segal v. United States, 8 Cir., 246 F.2d 814, certiorari denied 355 U.S. 894, 78 S.Ct. 269, 2 L. Ed.2d 192; Stoneking v. United States, 8 Cir., 232 F.2d 385, 389, certiorari denied 352 U.S. 835, 77 S.Ct. 54, 1 L.Ed.2d 54; 354 U.S. 941, 77 S.Ct. 1406, 1 L.Ed. 2d 1540, rehearing denied 355 U.S. 852, 78 S.Ct. 78, 2 L.Ed.2d 61. On this premise it is strongly insisted that when the court's charge in its entirety is accorded proper consideration in light of the facts and circumstances, the challenged portions thereof are not vulnerable to the claim of prejudicial error.

Resolution of the issue in light of the respective contentions of the parties requires consideration of the charge as a whole because obviously if the charge failed to lay down proper standards to guide and assist the jury in their deliberations, then the harm, if any, resulting from that portion of the charge under attack was not removed by the remaining portions thereof.

█ It is now firmly established that an offense may arise under the Act even though the defendant obtains possession of the automobile in the first instance by permission of the owner. This was conclusively settled by the Supreme Court in United States v. Turley, 352 U.S. 407, 417, 77 S.Ct. 397, 402, 1 L.Ed.2d 430, where the Court interpreted the word "stolen" as used in 18 U.S.C.A. § 2312 to include "all felonious takings of motor vehicles with intent to deprive the owner of the rights and benefits of ownership, regardless of whether or not the theft constitutes common law larceny." Compare Brown v. United States, 8 Cir., 277 F.2d 201, 203, where the defendant obtained possession of the automobile by renting the same but later feloniously converted and transported it in interstate commerce. See also Miller v. United States, 4 Cir., 261 F.2d 546, 547; Lambert v. United States, 5 Cir., 261 F.2d 799, 801.

██ In Dyer Act prosecutions the Government is required to establish the existence of three essential elements. One, that the motor vehicle was stolen, that is, that possession thereof was obtained through larceny, or that there was a felonious conversion with intent to deprive the owner of the vehicle within the meaning of United States v. Turley, supra; two, that the defendant transported the automobile in interstate commerce, and three, that when so transported the defendant knew the motor vehicle had been stolen. Here, both the first and second elements were in controversy and, of course, were fact questions which the jury was required to resolve. Certainly there was substantial competent evidence from which the jury, *under proper instructions*, reasonably could have found against the defendant on both issues, but we are persuaded to believe that the underlying question of whether the automobile had been feloniously converted by defendant was not submitted in clear and concise language. Indeed, the charge, insofar as it touched on this element of the offense, was so couched that, conceivably, it served to confuse rather than clarify the issue. Thus at the outset of the charge, the Court stated, "We are not concerned here with whether or not the man stole the car. It is a question of whether or not he transported it across the state line knowing it to have been stolen." This statement was followed with: "It so happens in this case, of course, that if the man didn't take the car wrongfully or *within the meaning of the law*,[2] he will not be guilty." (Emphasis supplied.)

█ We are satisfied that the portion of the charge under scrutiny cannot be sustained as constituting legitimate and proper comment on the evidence. Sullivan v. United States, 85 U.S.App.D.C. 409, 178 F.2d 723. The challenged statements not only invaded the province of the jury as to a material matter, but thereby the court prejudicially assumed, upon a finding that the automobile had been driven into Missouri, that the defendant had wrongfully and feloniously acquired possession thereof and converted the same with intent to deprive the owner of the benefits of ownership.

█ Since no portion of the charge, which we have considered as a whole, can properly be regarded as having submitted the element of felonious conversion of the automobile, it necessarily follows that the vice and ill effects of the portion under attack were not cured and rendered harmless by the remainder of the charge.

The judgment is reversed and the cause remanded for another trial.

2. The meaning which the Court attached to the italicized phrase is not clear to us.